**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEREK GRANT,

          CASE NO. 20-10867

   *Plaintiff*,     DISTRICT JUDGE STEPHEN J. MURPHY

*v.*          MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 12) be **DENIED**, that the Commissioner's Motion for Summary Judgment (ECF No. 13) be **GRANTED**, and that this case be affirmed.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq*. and the Supplemental Security Income ("SSI") program of

Title XVI, 42 U.S.C. § 1381 *et seq*. (Doc. 6; Tr. 1-3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 13.)

Plaintiff Derek Grant's applications for benefits were filed on March 25, 2015 and were initially denied on June 6, 2015. (ECF No. 9, PageID.122, 137.) On July 13, 2016, Plaintiff appeared before Administrative Law Judge (ALJ) White-Simmons who denied Plaintiff's claims in a decision dated August 30, 2016. (ECF No. 9, PageID.60.) Plaintiff timely filed a request for review and on June 26, 2017, the Appeals Council issued a decision denying Plaintiff's request for review. (ECF No. 9, PageID.45-47.) But then on July 13, 2018, pursuant to a stipulated decision from the Eastern District of Michigan remanding the case to the Commissioner,[1] the Appeals Council remanded the case to ALJ White-Simmons. On February 26, 2019, Plaintiff appeared at a hearing before ALJ White-Simmons. (ECF No. 10, PageID.1219-1262.)  On April 25, 2019, ALJ White-Simmons again issued a decision denying Plaintiff's claims. (ECF No. 10, PageID.1196-1211.) After Plaintiff filed a timely request for review, on February 2, 2020, the Appeals Council denied Plaintiff's request for review. (ECF No. 10, PageID.1190-1192.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is

---

[1] The district court decision noted that the case was being remanded so the ALJ could "(1) obtain evidence by a medical expert; (2) evaluate whether the claimant's impairments meet or medically equal a Listed Impairment at Step three of the Sequential Evaluation Process; and (3) if necessary, obtain supplemental evidence from a vocational expert to clarify the effects of the assessed limitations on the occupational base." (ECF No. 10, PageID.1296.)

restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be

3

expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The

Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528,

534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the

existence and severity of limitations caused by [his or] her impairments and the fact that

she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of*

*Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if

4

the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (ECF No. 10, PageID.1211.) The ALJ noted that Plaintiff had "amended his alleged disability onset date to a closed period of disability beginning on August 4, 2015, and ending on May 24, 2017, the day the claimant returned to work." (ECF No. 10, PageID.1199.) The ALJ found at Step One that Plaintiff met the insured status requirements through June 30, 2018, and had not engaged in substantial gainful activity between August 4, 2015 and May 24, 2017, the alleged closed period of disability. (ECF No. 10, PageID.1202.) At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: "lumbar spondylosis and disc protrusion at L5-S1 with severe bilateral foraminal stenosis, resulting in neurogenic claudication; and chronic obstructive pulmonary disease (COPD)." (ECF No. 10, PageID.1202-1203.) At Step Three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listed impairments. (ECF No. 10, PageID.1204-1205.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work. (ECF

5

No. 10, PageID.1205-1209.) At Step Four, the ALJ found that Plaintiff was not able to return to any past relevant work. (ECF No. 10, PageID.1209.) At Step Five, the ALJ found that Plaintiff could perform several positions which exist in substantial numbers in the national economy. (ECF No. 10, PageID.1209-1210.)

### E. Administrative Record

#### 1. Medical Evidence

Since this case involves a closed period of disability, I will focus, as did the ALJ, on the medical evidence relevant to that time period, i.e., August 4, 2015 through May 24, 2017. Specific consideration will be made under the relevant arguments.

#### 2. Application Reports and Administrative Hearing

#### a. Plaintiff's and Expert Testimony at the Hearing

Plaintiff testified that during the relevant closed period, August of 2015 to May 24, 2017, he could not work because his back was "hurting me real bad" and he was "taking shots; I was taking pain pills, Percocets and all that stuff." (ECF No. 10, PageID.1226.) The ALJ noted that based on the Appeals Council's remand, experts in orthopedics as well as pulmonology were present in person or via telephone. (ECF No. 10, PageID.1227.)

Dr. Kendrick, orthopedic specialist, testified that Plaintiff's impairments have "primarily been limited to his low back. He's had elements of lumbar spondylosis and disc protrusion, primarily at the L5-S1 level, with severe bilateral foraminal stenosis" which was "noted in 5F, and that's been present throughout the course of his treatment,

6

and all of his symptoms that have occurred is related to that" although Plaintiff "does have some mild COPD, and pulmonary function tests were normal [INAUDIBLE] COPD a nonsevere problem." (ECF No. 10, PageID.1229-1230.) When asked about functional limitations, Dr. Kendrick "would place his limitations very close to sedentary – between light and sedentary" and when asked to specify, Dr. Kendrick added, "I'd say 15 pounds occasionally, 10 pounds or less frequently; standing and walking for four hours, sitting for six. I'd restrict all of the postural, sitting, stooping, kneeling, crawling, balancing, and squatting, to only occasional. He could do stairs occasionally, but no ladders, ropes or scaffolds. I think he should avoid workplace hazards like, like dangerous moving machinery, and unprotected heights, and the like. And [INAUDIBLE] apply to upper extremities." (ECF No. 10, PageID.1231.) When asked what evidence Dr. Kendrick could cite to support his opinion, he relied on his "own experience" that "people that have chronic pain can, can manage to work at a near-sedentary level" and he noted that there was nothing in the record indicating that Plaintiff needed any assistance with ambulation such as a cane, walker or wheelchair. (ECF No. 10, PageID.1231-1232.)

Dr. Goldstein, internist and pulmonologist, testified that Plaintiff's "pulmonary functions are normal" and that "many people with cough and shortness of breath who smoke are labeled as COPD" but "[w]ith his normal pulmonary functions, he does not have a significant problem." (ECF No. 10, PageID.1234-1235.) He characterized the COPD as "nonsevere" and indicated that the only functional limitations would be "try to avoid irritants at work." (ECF No. 10, PageID.1235-1236.)

7

Plaintiff testified that between August 2015 through May 2017, he lived alone and did not drive because he lost his license due to prior drunk driving convictions. (ECF No. 10, PageID.1237-1239.) Plaintiff's pain during the relevant time was at a consistent 8.5 on a daily basis. (ECF No. 10, PageID.1248.) Medication and injections "took the pain down" to a "five, six, something like that." (ECF No. 10, PageID.1249.) Plaintiff could lift five or ten pounds, walk two blocks or more, but had difficulty stooping or squatting because it "was hard for me to stand back up." (ECF No. 10, PageID.1251-1252.) After Plaintiff obtained his Associates Degree in April 2017, he was able to return to the workplace in August 2017. (ECF No. 10, PageID.1254.) In the relevant time period, he was able to cook, do laundry, carry his laundry basket, walk downstairs and did not have any problems with personal care. (ECF No. 10, PageID.1255.)

### b.   The VE's Testimony at the Administrative Hearing

The ALJ asked the Vocational Expert (VE) to consider a hypothetical person of Plaintiff's age, education and past work experience who "is limited to, let's start with the light exertional level, with no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; as well as occasional exposure to environmental irritants." (ECF No. 10, PageID.1257-1258.) The VE indicated that Plaintiff's past work as an assembler would remain available and that Plaintiff could perform other jobs available in the national economy of garment sorter (DOT 222.687-014) (200,455 jobs), cafeteria attendant (DOT 311.677-010) (108,683 jobs) and laundry worker (DOT 302.685-010) (454,300 jobs).

8

The ALJ next asked the VE to consider another hypothetical at the light exertional level "but the individual can lift 15 pounds occasionally, 10 pounds frequently; stand or walk for four hours and sit for six hours in a workday. The posturals would be restricted to no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; as well as occasional balancing, stooping, kneeling, crouching, and crawling; no exposure to moving machinery; no unprotected heights; and let's also say occasional exposure to environmental irritants." (ECF No. 10, PageID.1258.) The VE responded that under this hypothetical, past work would be eliminated but that such a person could perform other jobs available in the national economy such as the earlier mentioned garment sorter position, price marker (DOT 209.587-034) (255,649 jobs), and routing clerk (DOT 222.587-038) (218,073 jobs). (ECF No. 10, PageID.1259.) If a sit/stand option every 30 minutes were added, the routing clerk, price marker and garment sorter positions would remain available. (ECF No. 10, PageID.1259.) Based on the VE's knowledge of the jobs as performed, he indicated that although light jobs include lifting up to 20 pounds, even if one could only lift 10 pounds, the listed jobs would remain available. (ECF No. 10, PageID.1260.) If a person were to be off task for 20% or more of the workday, all work would be eliminated. (ECF No. 10, PageID.1261.) The VE indicated his testimony was consistent with the Dictionary of Occupational Titles (DOT) except that the DOT does not speak to sit/stand options. (ECF No. 10, PageID.1261.) When questioned by Plaintiff's attorney, the VE responded that Plaintiff did not have any skills that would transfer to sedentary work. (ECF No. 10, PageID.1261.)

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[2] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the

---

[2]  Various amendments have been made to the regulations since Plaintiff filed his claim.  *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same)); *Miller v. Comm'r of Soc. Sec.*, No. 1:17-cv-0718, 2018 WL 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with

11

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence

in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

**G.    Analysis**

Plaintiff argues that the "ALJ's Step 3 analysis and determination that Plaintiff's impairments do not meet or medically equal Listing 1.04(A) is not supported by substantial evidence" because the ALJ failed to "give a reasoned explanation of his

14

findings and conclusions" and instead merely "summarily concluded" that Plaintiff did not meet or equal the Listing. (ECF No. 12, PageID.1736-1739.) Plaintiff further contends that the ALJ "failed to create an accurate residual functional capacity assessment and therefore erroneously found work at Step Four and Step Five." (ECF No. 12, PageID.1742-1746.) Finally, Plaintiff argues that the ALJ's "evaluation of the Plaintiff's subjective symptoms is not supported by substantial evidence." (ECF No. 12, PageID.1246-1750.) I will take each argument in turn.

### 1. Listing 1.04(A)

Plaintiff argues that the "ALJ's Step 3 analysis and determination that Plaintiff's impairments do not meet or medically equal Listing 1.04(A) is not supported by substantial evidence" because the ALJ failed to "give a reasoned explanation of his findings and conclusions" and instead merely "summarily concluded" that Plaintiff did not meet or equal the Listing. (ECF No. 12, PageID.1736-1739.)

Although it is Plaintiff's burden of proof at step three, the ALJ must provide sufficient articulation of his findings to permit meaningful review. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011); *Woodall v. Colvin*, No. 5:12cv1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013) ("[T]he ALJ must build an accurate and logical bridge between the evidence and his conclusion.").

The ALJ expressly considered Listing 1.04 in his opinion, concluding:

Listing 1.04 (disorders of the spine) was not met, as the evidence does not demonstrate compromise of a nerve root (including cauda equine) or the spinal cord with (A) evidence of nerve root compression characterized by

15

neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, (atrophy with muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raise test or (B) spinal arachnoiditis resulting in the need for changes in position or posture more than once every 2 hours; (C) lumbar stenosis resulting in pseudoclaudication and resulting in the inability to ambulate effectively (13F; 16F; 19F; testimony of medical expert Ronald Kendrick). While there is nerve root compression in the diagnostic imaging, Dr. Kendrick testified that the nerve root damage has not been associated with any sensory loss, which is required to meet this listing (testimony).

(ECF No. 10, PageID.1204.)   Here, the ALJ provided an explanation and the evidence relied upon, including both medical record exhibits and the testimony of medical expert Dr. Kendrick. Therefore, the ALJ's explanation was adequate.

The elements of Listing 1.04 are:

Disorders of the spine [] resulting in compromise of a nerve root [] or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness,

and resulting in inability to ambulate effectively, as defined in
1.00B2b.

20 C.F.R. pt. 404, Subpt. P. App. 1, Listing 1.04.

Plaintiff also contends that that Listing 1.04 could be met or equaled because, in
addition to back pain, tenderness, range of motion limitations and positive straight leg
raises, "there is evidence of lower extremity sensory deficits despite the medical expert's
denial of such" citing ECF No. 10, PageID.1680. (ECF No. 12, PageID.1740.) However,
as noted by the Commissioner, that single citation is to a treatment note dated May 10,
2017, only two weeks before Plaintiff resumed substantial gainful activity. (ECF No. 13,
PageID.1761-1762.) In addition, Plaintiff's alleged sensation was normal from 2016
through May of 2017, and in June of 2017. (ECF Nos. 9 and 10, PageID.477, 484, 492,
516, 532, 1611, 1649, 1694, 1696-1698, 1702-1703.) Further, Plaintiff's alleged straight
leg raising issues pre-date his amended onset date. (ECF Nos. 9 and 10, PageID.355, 359,
553, 560, 566, 1611.) Finally, although Plaintiff contends the ALJ should not have based
his finding on the opinion of medical expert Dr. Kendrick alone, both the regulations and
case law support the opposite conclusion. Medical expert testimony, especially when
uncontradicted, may provide substantial evidence that a plaintiff does not meet or equal a
Listing. *Harris v. Barnhart*, 231 F. Supp. 2d 776, 781 (N.D. Ill. 2002), citing 20 C.F.R. §
416.927(f)(2) and *Anderson v. Bowen*, 868 F.2d 921, 925 (7th Cir. 1989); *accord*, *Jones
v. Comm'r of Soc. Sec.*, 2012 WL 946997, at *8 (N.D. Ohio mar. 20, 2012)
(uncontradicted medical expert testimony that plaintiff did not meet or equal a Listing

was sufficient to provide substantial evidence that the plaintiff did not meet or equal the Listing). I therefore recommend that this ground does not provide cause for remand.

## 2. RFC

Plaintiff further contends that the ALJ "failed to create an accurate residual functional capacity assessment and therefore erroneously found work at Step Four and Step Five." (ECF No. 12, PageID.1742-1746.) Specifically, Plaintiff argues that the ALJ failed to consider "the limitation to light work activity and the lack of any absenteeism due to the Plaintiff's impairments and required treatment." (ECF No. 12, PageID.1743.) Plaintiff contends the ALJ should not have relied heavily on Dr. Kendrick's testimony because his "testimony is internally inconsistent and arguably supports a sedentary RFC." (*Id.*)

When asked about functional limitations, Dr. Kendrick "would place his limitations very close to sedentary – between light and sedentary" and when asked to specify, Dr. Kendrick added, "I'd say 15 pounds occasionally, 10 pounds or less frequently" and Dr. Kendrick indicated that "people that have chronic pain can, can manage to work at a near-sedentary level[.]" (ECF No. 10, PageID.1231-1232.)

Although Plaintiff argues that Dr. Kendrick's testimony is internally inconsistent because he seems to vacillate between light and sedentary levels of work, I suggest that the ALJ clarified that ambiguity with the VE when, based on the ALJ's prompting, the VE noted that although light jobs include lifting up to 20 pounds, even if one could only lift 10 pounds, the proffered jobs would remain. (ECF No. 10, PageID.1260.) In addition,

18

the ALJ's RFC finding was not that Plaintiff could perform a full range of light work but rather a limited range, based on specific limitations unique to this Plaintiff. (ECF No. 10, PageID.1257-1261.) Thus, the ALJ did not err.

I further suggest the ALJ properly considered and rejected the contention that Plaintiff would be absent so frequently as to preclude employment. To the extent that Plaintiff relies on his subjective complaints, I will address that under the next section. As to absenteeism based on required medical appointments, Plaintiff asserts that "he had no less than 127 appointments with various doctors, hospitals, and mental health professionals" between August 4, 2015 and May 24, 2017, averaging "just under six appointments a month." (ECF No. 12, PageID.1744-1745.) However, where the record fails to establish a need for such frequent treatment, an ALJ's conclusion that medical treatment would not require Plaintiff to be absent excessively is supported by substantial evidence. *Harrison v. Comm'r of Soc. Sec.*, 2016 WL 759379, at *6 (E.D. Mich. Feb. 26, 2016). In addition, "it is insufficient for plaintiff to argue that, since [his or] her medical professionals apparently scheduled her for several appointments, that schedule should 'speak for itself' to establish, without objective evidence in the record, that [he or] she needed that many appointments and therefore, is disabled." *Beck v. Comm'r of Soc. Sec.*, 2020 WL 5417536, at *3-4 (N.D. Ohio Sept. 10, 2020). Nor can a court "assume" appointments cannot be made around a work schedule, e.g., during lunch hours, after work, or on weekends. *Pryor v. Comm'r of Soc. Sec.*, 2015 WL 1268977, at *7 (E.D> Mich. Aug. 21, 2015). In this case, Plaintiff merely asserts the average number of visits,

19

without addressing the need for the frequency or the need to fit all appointments into the workday. I suggest this conclusory assertion is insufficient to undermine the ALJ's findings.

### 3. Subjective Complaints

Finally, Plaintiff argues that the ALJ's 'evaluation of the Plaintiff's subjective symptoms is not supported by substantial evidence." (ECF No. 12, PageID.1246-1750.) Plaintiff specifically argues that the ALJ "minimized the Plaintiff's back pain and alleged limitations because he 'only engaged in conservative treatment', 'did not demonstrate any sensory deficits', and that he is able to 'tolerate the pain'. These statements are untrue and misleading." (ECF No. 12, PageID.1748) (internal citation omitted). Plaintiff cites to two places in the administrative record where Plaintiff exhibited sensory deficits and argues that "even if the Plaintiff made a comment about tolerating his pain, that does not negate the mountain of medical evidence and testimony that suggests his pain is unbearable at times and that it severely restricts his ability to function" citing instances when Plaintiff reported pain at 5 to 8 out of 10. (ECF No. 12, PageID.1749.) Finally, Plaintiff criticizes the ALJ's citation to Plaintiff's activities of daily living including watching television and attending class because watching television is sedentary and the ALJ failed to note that Plaintiff "misses class or leaves early due to pain and lack of focus." (ECF No. 12, PageID.1749-1750.) Since Plaintiff does not challenge the ALJ's findings relevant to his COPD, consideration will be limited to symptoms relating to his back issues.

The ALJ considered all the evidence and concluded that during the closed period of disability, Plaintiff's "allegations of the duration and intensity of his impairments is only partially consistent with the objective medical evidence of record." (ECF No. 10, PageID.1208.) The ALJ found Plaintiff's limitations would "more than minimally limit his ability to perform work related activities" but that they "would not be entirely work preclusive." (*Id.*) The ALJ found that Plaintiff "had only engaged in conservative treatment, did not demonstrate any sensory defects, displayed normal muscle strength in his lower extremities, and at times indicated that he was able to 'tolerate the pain'" and that although Plaintiff "could be a candidate for neurosurgery" "this would only be the case if conservative treatment failed" and there was "no evidence in the record showing that conservative treatments offered to the claimant had failed" since Plaintiff "reported a good reduction in his pain through the use of pain medications, epidural injection, and nerve block procedures." (ECF No. 10, PageID.1208.) The ALJ also noted Plaintiff's ability to "dress himself, bathe independently, care for his hair, shave himself, feed himself, use the toilet independently, remember to take medications, clean his room, iron, wash dishes, cook meals, use public transportation, shop in stores, pay bills, count change, handle a savings account, use a checkbook, read, watch television, participate in social activities, get along with others, pay attention, follow instructions, and attend school." (ECF No. 10, PageID.1209.)

It is proper for the ALJ to consider that Plaintiff has only undergone conservative treatment and the treatment Plaintiff received, medications, injections and nerve blocks,

which are all less than surgery, and is considered conservative. *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 353 (6th Cir. 2020); *Brannon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) ("conservative treatment approach suggests the absence of a disabling condition"); *McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non-aggressive treatment.").

In addition, the ALJ properly considered the record evidence regarding Plaintiff's activities of daily living. 20 C.F.R. §404.1529(c)(3)(i); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). It was also reasonable for the ALJ to consider the improvements Plaintiff made after taking his medications and treatment. *Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014).

As to sensory deficits, Plaintiff cites to two treatment notes from February and May 2017: ECF No. 10, PageID.1680, 1684. However, the majority of notations in the treatment notes show no sensory deficits. (ECF No. 9, PageID.478; ECF No. 10, PageID.1625, 1649, 1688, 1698, 1702-1703.)

I also note that the ALJ's conclusions are supported by the medical expert opinion testimony. (ECF No. 10, PageID.1229-1236.)

I therefore suggest that the ALJ's conclusions are not undermined by Plaintiff's arguments and are supported by substantial evidence.

### H.   Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 12) be **DENIED**, the Commissioner's Motion (ECF No. 13) be **GRANTED**, and that the Commissioner's decision be affirmed.

## III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 1, 2021                    S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge